[No. A036565. First Dist., Div. Three. Jan. 16, 1987.]

MAXIMUM TECHNOLOGY, Petitioner, v.
THE SUPERIOR COURT OF ALAMEDA COUNTY, Respondent;
MINNESOTA MINING AND MANUFACTURING COMPANY et al.,
Real Parties in Interest.

**COUNSEL**

Steven M. Kipperman and H. Michael Brucker for Petitioner.

No appearance for Respondent.

Paul Alexander, Rene P. Tatro, Harold E. Kahn, Heller, Ehrman, White & McAuliffe, Duane E. Clapp, Jr., Christopher W. Wood and Clapp, Moroney, Bellagamba, Davis & Vucinich for Real Parties in Interest.

**OPINION**

**MERRILL, J.**—Petitioner Maximum Technology, plaintiff in an action seeking damages arising out of a failed commercial transaction, challenges a ruling striking its at-issue memorandum and removing the case from the civil active list. The court's action was taken because one of several defen-

dants was under the jurisdiction of a federal bankruptcy court. We conclude that the court erred in striking the at-issue memorandum on that ground.

Petitioner purchased highly reflective silver film manufactured by Minnesota Mining and Manufacturing Company (3M) and distributed by Litrex Corporation. According to petitioner, the film was defective. Unused film was returned to 3M, who accepted the return and sent a refund to petitioner through Litrex. According to petitioner, Litrex "converted" the refund check.

Petitioner has sued 3M, Litrex, and Robert A. D. Schwartz (as alter ego of Litrex). Before petitioner was able to levy an attachment on Litrex's assets, Litrex filed for chapter II reorganization (Bankruptcy Act, 11 U.S.C. § 1101 et seq.). The other defendants answered the complaint (3M and Schwartz each cross-complained against other parties) and petitioner filed an at-issue memorandum. Schwartz then moved to strike the at-issue memorandum, asserting that the case was not "at issue" as to him because of the bankruptcy of defendant Litrex. He argued that Litrex was an indispensible party to the proceedings, and noted that all litigation against defendant Litrex was stayed pursuant to the Bankruptcy Code. The court ordered the at-issue memorandum stricken and the action removed from the civil active list. This petition followed.

Rule 209, California Rules of Court, provides that "[n]o civil case shall be placed on the civil active list or be set for a trial until it is at issue and a party has served and filed an at-issue memorandum . . . ." It then lists the contents of an at-issue memorandum, which include a statement "(3) that all essential parties have been served with process or appeared and that the case is at issue as to those parties . . . ." Rule 223, California Rules of Court, provides that "[a] case shall not be removed from the civil active list except by order of court on stipulation of the parties or by order of court on the court's motion or on a party's notice motion. A case may be restored to the civil active list only by filing a new at-issue memorandum or by order of court."

■ In general, a court has discretion in the control and regulation of its calendar and may, for good cause, strike a case from the calendar (see *Guardianship of Lyle* (1946) 77 Cal.App.2d 153, 155-156 [174 P.2d 906]). However, where the court has removed a case from the civil active list for an improper reason, an appellate court may issue a peremptory writ to order its restoration (see *Hernandez* v. *Superior Court* (1985) 169 Cal.App.3d 1169 [215 Cal.Rptr. 755]).

Petitioner asserts, and real party in interest 3M does not deny, that the court struck the at-issue memorandum because it did not believe the case

was at issue because Litrex was in bankruptcy. Implicitly, the court concluded that Litrex was an "essential" party within the meaning of rule 209(3), California Rules of Court. Real party contends that Litrex is essential because petitioner has sued its principal shareholder/officer under the alter ego theory and all the evidence introduced against Schwartz would also concern Litrex. Real party argues that "[w]here . . . the adjudication of issues as to one party necessarily involves the adjudication of issues as to another party who has also been sued but is currently in bankruptcy, the party in bankruptcy is quite clearly an 'essential party.' "

■ The question we address is whether bankruptcy of one defendant can prevent plaintiff from proceeding against another defendant, whose liability might be derivative of liability of the bankrupt. We conclude that Litrex is not an essential party to a suit against 3M and Schwartz within the meaning of rule 209.

Under recently liberalized rules for joinder, plaintiff need not have joined Litrex in the action unless "(1) in [its] absence complete relief cannot be accorded among those already parties or (2) [it] claims an interest relating to the subject of the action and is so situated that the disposition of the action in [its] absence may (i) as a practical matter impair or impede [its] ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest." (Code Civ. Proc., § 389, subd. (a).) Even if the absent Litrex satisfied one of those criteria (a doubtful proposition), the court might have determined that the action should proceed in its absence if certain conditions spelled out in subdivision (b) of Code of Civil Procedure section 389 were met.

In keeping with the foregoing principles, we cannot conclude that because it joined Litrex, who is now in bankruptcy proceedings, petitioner should be barred from proceeding to trial against the remaining defendants. It would have been convenient to try the case against all three defendants at the same time, as petitioner intended to do. But bankruptcy of Litrex has intervened, threatening a potentially lengthy delay in petitioner's action against Litrex. Petitioner should not be placed in a poorer position in its action against the remaining defendants than it would have been had it not sued Litrex in this proceeding. The court's ruling that the case was not at issue would have had that effect.

■ We issue a peremptory writ of mandate in the first instance. Such a procedure is proper, as we have advised real party in interest that we might act by a peremptory writ in the first instance (Code Civ. Proc., § 1088; *Palma*

v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 177-180 [203 Cal.Rptr. 626, 681 P.2d 893]).

Let a peremptory writ of mandate issue directing the Alameda County Superior Court to vacate its order striking petitioner's at-issue memorandum, and to restore the case to the civil active list.

Scott, Acting P. J., and Barry-Deal, J., concurred.